### 5470. HATHAWAY *v.* THE STATE.

1. In a prosecution for practicing medicine illegally, the State is required to prove that the accused, with intent to receive compensation therefor, performed services such as are defined in section 1683 of the Civil Code, without registering in the county of his residence as required by section 1684. The burden is upon the State to prove, as a material fact in the case, the residence of the accused as alleged in the indictment; but the prosecution may rely upon the failure of the accused to attack prima facie or presumptive proof as to residence, which is sufficiently strong to compel the production of affirmative proof in order to rebut it.
2. A reviewing court can not undertake to pass upon the admissibility of documentary evidence the contents and materiality of which can not be ascertained from the record.
3. The court in charging the jury did not err, especially in the absence of a request, in not defining the term "reasonable doubt." The jury were correctly instructed as to the burden on the State to make out its case beyond a reasonable doubt, and that if they had a reasonable doubt as to any of the material allegations of the indictment, they should give the defendant the benefit of that doubt and acquit him.
4. The evidence authorized the verdict, and the judge of the superior court did not err in overruling the certiorari.

DECIDED MARCH 26, 1914.

Certiorari; from Fulton superior court—Judge Pendleton. November 20, 1913.

*Kemper & Weaver,* for plaintiff in error.

*Hugh M. Dorsey,* solicitor-general, *Lowry Arnold,* solicitor, contra.

RUSSELL, C. J. The plaintiff in error was convicted in the criminal court of Atlanta of practicing medicine without registering in the office of the clerk of the superior court of Fulton county, in violation of section 462 of the Penal Code. He sued out a writ of certiorari, and here excepts to the judgment of the superior court overruling the certiorari. According to the record, the volume of practice done by him was exceedingly small. He made a poultice from herbs, which he gathered in the suburbs of Atlanta, and applied it to the arm of the keeper of the hostelry where he was boarding, and he supplied one of the chambermaids with a bottle of "Klondike Kidney Cure," which appears to have relieved her of a severe case of stomach-ache. His treatment of his landlord's arm seems to have produced good physical results, but their acquaintanceship passed through a variety of vicissitudes and had a chequered career. It seems that the defendant had quite a stock of patent medicines, and these and some other personal property became the subject of an action of bail-trover brought by him, and it is to be suspected that the prosecution in the present case is more or less retaliatory of that litigation, and of a criminal warrant sworn out by the accused. These matters, however, were addressed to the jury, and, since the jury convicted the accused, we are without power to do more than to inquire whether the verdict is supported by evidence, and is free from legal errors which may have induced or contributed to the finding of the jury.

1. The first question presented by the record is whether the burden of proving the residence of one accused of practicing medicine in violation of section 462 of the Penal Code is upon the State, as a continuing burden, or whether it devolves upon the defendant, after it has been proved that he practiced medicine in a particular county, to establish, as an affirmative defense, that he did not reside in that county and that he had a license in some other county which would entitle him to practice anywhere in the State of Georgia, under the ruling in *Jones* v. *State,* 8 *Ga. App.* 411 (69 S. E. 315). We do not think the jury would have been authorized to convict the defendant on the complaint of the maid who had "awful pains" in her stomach, and who had her employer to pay the accused fifty cents for the medicine, which "did her good right away," for this showed nothing more than a sale of a patent nostrum. But the testimony of the prosecuting witness, who after detailing the serv-

ices rendered, and that he was benefited by the treatment, testified that "he made some poultices and bandaged them on my arm, and give me some pills, . . and for his services we agreed that I should give him credit for $2.50 on his board at my house, which I did,—he took the $2.50 on his board," comes clearly under the terms of section 1683 of the Civil Code; and there was positive uncontradicted testimony that the accused had not complied with the requirements of section 1684 of the code. The jury were authorized to find (if they gave preference in credibility to the testimony for the prosecution) that the accused prescribed and used agencies for the palliation of the prosecutor's ailment, with the intent of receiving compensation therefor, and were authorized to find that he had not registered in Fulton county, where the services were performed. There was no proof as to where the defendant resided; so the only question raised, under the assignment that the verdict was contrary to the evidence, is whether proof that the accused was sojourning in Fulton county at the time of the rendition of the services is sufficient to complete the showing that these services were rendered in violation of the law.

In *Morris* v. *State,* 117 *Ga.* 1, 4 (43 S. E. 368), where the accused was charged with the illegal practice of dentistry, it was held that when the State proved that he had practiced dentistry as charged, it was incumbent upon the accused to show that he had authority to practice, in order to exempt himself from the penalty of the law. The ruling in that case, however, can not be applied in the case at bar, for section 489 of the Penal Code of 1895 was taken from the act of 1872 (Acts of 1872, p. 28), in which it was provided that on the trial of an indictment against a person charged with illegal practice of dentistry, it should be incumbent upon the defendant to show that he had lawful authority to practice dentistry, in order to exempt himself from the penalties imposed by that act; and it seems that section 489, supra, is omitted from the Penal Code of 1910. We conclude, then, that the burden of proof is upon the State to show, in prosecutions under section 462 of the Penal Code, not only that the accused has recommended, prescribed, or applied some palliative remedy with the intent of receiving compensation therefor, but also to go further and show that the accused has not registered as required by section 1684 of the Civil Code, in the county shown by the evidence to be the county of

27

his residence. Besides showing that the defendant has not registered in the office of the clerk of the superior court of the particular county, the State must show also that that county is the county of the defendant's residence, or that the defendant resides beyond the limits of the State.

As already stated, the proof that the defendant had not registered as required by law, in the office of the clerk of the superior court of Fulton county, is not contradicted; and we think the circumstances in the case are sufficient to establish such a prima facie case of residence on the part of the defendant, at the time of the alleged services, as required explanation on his part, and authorized the jury, in the absence of any explanation, to conclude, either that he was at that time a resident of Fulton county or (what would have been equally damaging to him) that he was a resident of another State. Residence (as any other fact) may be proved by circumstantial evidence, and the jury is authorized to act upon the prima facie showing as to residence, until the circumstances by which it is supported are rebutted by more direct proof. In proving residence of one accused of practicing medicine without having registered in compliance with law, the prosecution may rely upon a prima facie case which is sufficiently strong to compel the production of affirmative proof in order to rebut it.

2. Complaint is made that a letter, written by the accused and received by the prosecutor in due course of mail, was admitted in evidence over the objection that it could not have a bearing on the case, because if it showed that the defendant intended to practice medicine, it showed that the practice was to be done in the State of Alabama, and because it was written several weeks after the time of the alleged offense. The letter is not set out in the record or attached as an exhibit, and for this reason we are not able to pass upon the merits of this exception. However, from the statement in the petition itself, we can not say that the court erred in permitting the introduction of the letter, for it is stated in the petition that the letter called for the sending of different medicines from Atlanta to a certain point in the State of Alabama; and the jury would be authorized to infer that the defendant intended to use these patent medicines in some way, and they might be authorized to treat this circumstance as corroborative of the testimony already introduced tending to show that he was practicing medicine by means of the administration of patent medicines.

3. In the petition for certiorari error is assigned upon the charge of the court on the subject of reasonable doubt. It appears, from the answer of the trial judge to the certiorari, that upon this subject the court charged as follows: "The State is required to make out its case by proof of every material allegation, beyond a reasonable doubt; and if you believe that the State has failed to prove any material allegation in the accusation, it will be your duty to render a verdict of not guilty; and if you have any reasonable doubt of the defendant's guilt, on hearing the evidence, it will be your duty to give him the benefit of that doubt and acquit him." This charge upon the subject of reasonable doubt was amply sufficient, and the absence of explanatory language, defining the term "reasonable doubt" itself, is approved. As was said in *Middleton* v. *State*, 7 *Ga. App.* 1 (66 S. E. 22): "It is very seldom that an amplified definition of the term 'reasonable doubt' elucidates the meaning of these simple words."

4. The real point in this case is whether the services rendered by the accused were humanitarian upon his part, and purely charitable, or were performed with the intent to receive compensation. The evidence in favor of the prosecution upon this point is, to our mind, weak and unsatisfactory, but it is sufficient to authorize the verdict of guilty, if the jury believed the witnesses for the State. If it be true, as earnestly urged by counsel, that the prosecution was based only on a dastardly plot to prevent the accused from being a witness in a criminal proceeding against J. R. Phillips, and to cause him to be confined in jail at the time of the commitment trial of Phillips, in order to enforce a settlement of a dispute between Phillips and himself, this view of the case would have authorized the jury to discredit the testimony for the prosecution; but that argument should have been addressed to the jury. While the discretion with which the judge of the superior court is clothed is more ample than that possessed by this court, he doubtless took the same view of the evidence to which we have just referred; and it can not be held that he erred in overruling the certiorari.

*Judgment affirmed. Roan, J., absent.*